1 9MAG 7916

ORIGINAL

Approved: _Alexandra Rothman_

ALEXANDRA N. ROTHMAN
Assistant United States Attorney

Before:   HONORABLE GABRIEL W. GORENSTEIN
          Chief United States Magistrate Judge
          Southern District of New York

- - - - - - - - - - - - - - - X

|                          |   |                    |
|--------------------------|---|--------------------|
|                          | : | **COMPLAINT**      |
| UNITED STATES OF AMERICA  | : |                    |
|                          | : | Violation of       |
| - v. -                   | : | 21 U.S.C. § 846    |
|                          | : |                    |
| CARLOS ESPINAL,          | : | COUNTY OF OFFENSE: |
|                          | : | NEW YORK           |
|           Defendant.     | : |                    |
|                          | : |                    |

- - - - - - - - - - - - - - - X

SOUTHERN DISTRICT OF NEW YORK, ss.:

ANTHONY MAIDA, being duly sworn, deposes and says that he
is a Task Force Officer with the Department of Homeland
Security, Homeland Security Investigations ("HSI"), and charges
as follows:

**COUNT ONE**

1.     From at least in or about August 2018, up to and
including on or about August 21, 2019, in the Southern District
of New York and elsewhere, CARLOS ESPINAL, the defendant, and
others known and unknown, intentionally and knowingly did
combine, conspire, confederate, and agree together and with each
other to violate the narcotics laws of the United States.

2.     It was a part and an object of the conspiracy
that CARLOS ESPINAL, the defendant, and others known and
unknown, would and did distribute and possess with intent to
distribute controlled substances, in violation of Title 21,
United States Code, Section 841(a)(1).

3.    The controlled substances that CARLOS ESPINAL, the defendant, conspired to distribute and possess with intent to distribute were (a) 400 grams and more of mixtures and substances containing a detectable amount of fentanyl, in violation of Title 21, United States Code, Section 841(b)(1)(A), and (b) 100 grams and more of mixtures and substances containing a detectable amount of heroin, in violation of Title 21, United States Code, Section 841(b)(1)(B).

(Title 21, United States Code, Section 846.)

The bases for my knowledge and for the foregoing charge are, in part, as follows:

4.    I am a Task Force Officer with HSI and I have been personally involved in the investigation of this matter. This affidavit is based upon my personal participation in the investigation of this matter, my conversations with law enforcement agents, witnesses, and others, as well as my examination of reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated. Where figures, calculations, and dates are set forth herein, they are approximate, unless stated otherwise.

5.    During the course of this investigation, I have spoken with a cooperating witness ("CW-1") about CARLOS ESPINAL, the defendant, among other individuals. CW-1 has pleaded guilty to federal racketeering and narcotics charges pursuant to a cooperation agreement with the Government, in the hope of receiving leniency at sentencing. CW-1's information has proven credible and reliable, and it has been corroborated by other evidence, including narcotics recovered during this investigation.

6.    Based on my conversations with CW-1, and my communications with other law enforcement agents who have also debriefed CW-1, I have learned the following, in substance and among other things:

a.    In or around 2017, CW-1 was introduced to an individual named "Carlos," as a source of supply for narcotics. Based on a review of commercial databases, as well as

2

surveillance conducted in this investigation, law enforcement identified "Carlos" as CARLOS ESPINAL, the defendant.

b.     Between in or about August 2018, and in or about October 2018, on four separate occasions, CW-1, acting at law enforcement direction, purchased from ESPINAL a total of more than 400 grams of substances that later tested positive for fentanyl and heroin. In each transaction, CW-1 or an undercover officer acting in concert with CW-1 gave ESPINAL a sum of pre-recorded buy money, and in exchange, ESPINAL provided the requested narcotics.

c.     In addition, on or about April 1, 2019, CW-1 purchased from a co-conspirator not named as a defendant herein ("CC-1") approximately 80 grams of a substance that later tested positive for fentanyl and heroin. This transaction was surveilled and occurred at a restaurant located in Manhattan, New York.

7.     In or about May and June 2019, pursuant to a judicially-authorized wiretap on a cellphone used by CC-1, law enforcement intercepted the following text and voice communications, in substance and in part, between CC-1, another co-conspirator not named as a defendant herein ("CC-2"), and CARLOS ESPINAL, the defendant, regarding an upcoming narcotics transaction:[1]

May 28, 2019

| CC-2: | Leaving friday best I can do...still got 75 of that other definitely need that 100 to mix with...pockets hurt but I'll have that bread for you when I touch. |
| CC-2: | That other hit hurt hope that shit aint like that need that shit on point. |
| CC-1: | Like the last |

Based on my training, experience, and familiarity with the investigation, I believe that CC-2 was asking CC-1 for 100 grams of fentanyl ("need that 100") to combine with ("mix with") narcotics previously purchased from CC-1 ("still got 75 of that other").

---

[1] All descriptions and quotations of intercepted communications are based on preliminary draft summaries, transcripts, and/or translations of recordings.

3

June 3, 2019

|         |                                                          |
|---------|----------------------------------------------------------|
| CC-1:   | The faggot couldn't come this weekend bro               |
| ESPINAL:| Listen to that now!                                      |
| CC-1:   | No, he wants that I meet with him...at least, half way.  |
|         | . . .                                                    |
| CC-1:   | No, it's for today...it's today...I'm going to pick it up in a little while, you heard? I'm gonna go get that shit, right now, eh told me, he is ready for me...that he has it. It's going to take me a couple of hours but, I will go to you tonight. |
| ESPINAL:| So, what you gonna need?                                 |
| CC-1:   | Uh...at least to make one peso.                          |
| CC-1:   | But make sure it's like the last...good!                 |

Based on my training, experience, and familiarity with the investigation, I believe that CC-1 and ESPINAL were discussing ESPINAL supplying CC-1 with $1,000 worth of heroin ("at least to make one peso") that CC-1 was going to deliver to CC-2.

8.    Based on my involvement in this investigation, including my communications with other law enforcement agents and participation in surveillance, I have learned that, on or about June 3, 2019, following the communications discussed above, CC-1 drove to the residence (the "Residence")[2] of CARLOS ESPINAL, the defendant, in Brooklyn, New York, entered briefly, and then returned to his vehicle.  CC-1 then drove to the Washington, D.C. area, where other law enforcement agents and I observed CC-1 meet with CC-2 in a parking lot and engage in what I believe, based on my training and experience, appeared to be a narcotics transaction.  Other law enforcement agents and I subsequently arrested CC-2 and recovered approximately 100 grams of a substance that field-tested positive for heroin.

9.    In addition, in or about August 2019, pursuant to a judicially-authorized wiretap on a cellphone used by CARLOS ESPINAL, the defendant, law enforcement intercepted the following communications, in substance and in part, between ESPINAL and a co-conspirator not named as a defendant herein ("CC-3"):

---

[2] Law enforcement identified the Residence as where ESPINAL lives based on a review of commercial databases and law enforcement surveillance.

4

```
CC-3:     Yea
ESPINAL:  U home
CC-3:     Yea
ESPINAL:  Outside
CC-3:     Ok I'm coming
ESPINAL:  Ok
CC-3:     Which one 1st
ESPINAL:  Light
CC-3:     ok
```

Approximately one hour later, CC-3 sent the following text messages to ESPINAL:

```
CC-3:     It's not great at all I giv [sic] it a 6½-7
CC-3:     It's quick and doesn't last
```

Based on my training, experience, and familiarity with the investigation, I believe that ESPINAL delivered a sample of heroin to CC-3 in order for CC-3 to test the product ("Outside" "OK I'm coming"). I further believe that CC-3 asked ESPINAL which product CC-3 should test first ("Which one 1st"), and ESPINAL responded that CC-3 should test the light heroin first ("Light"). I further believe that CC-3 reported to ESPINAL that the high from the heroin did not last for a while ("It's quick and doesn't last") and that CC-3 would give the heroin a six-and-a-half or seven ranking ("It's not great at all I giv [sic] it a 6½-7.").

10. On or about August 21, 2019, other law enforcement agents and I were conducting surveillance on the Residence when I observed two co-conspirators not named as defendants herein ("CC-3" and "CC-4") arrive in a vehicle (the "Vehicle"). CC-3 entered the Residence, and shortly thereafter, exited the Residence carrying a bag. Other law enforcement agents and I conducted a traffic stop on the Vehicle and obtained consent to search the Vehicle. Other law enforcement agents and I recovered approximately $5,000 from the pants' pocket of CC-3, as well as approximately $25,000 in the back of the Vehicle in the same bag, which I had observed CC-3 carrying out of the Residence. Based on my training, experience, and familiarity with the investigation, I believe that the cash recovered from the Vehicle is related to a narcotics transaction conducted with CARLOS ESPINAL, the defendant, at the Residence.

WHEREFORE, the deponent respectfully requests that CARLOS ESPINAL, the defendant, be imprisoned or bailed as the case may be.

ANTHONY MAIDA
Task Force Officer
Department of Homeland Security,
Homeland Security Investigations

Sworn to before me this
22nd day of August 2019.

THE HONORABLE GABRIEL W. GORENSTEIN
CHIEF UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

6